Good morning. Our first case is number 23 dash 3 2 3 5 in Ray BPS Direct LLC at all. It's back to health. Good morning, and I'd like to reserve three minutes. May it please the court. My name is Kate Baxter cross. I am court appointed interim colleague counsel for appellate Heather Cornell and Peter Montecalvo, along with the rest of the name plaintiffs and the tutors class. The district court erred in dismissing the case for lack of article free standing. Plaintiff's position, as you may be aware from the briefing, is that all main plaintiffs adequately alleged standing. They suffered a concrete harm and invasion of privacy and that that doesn't require an analysis of whether the information intruded upon was sufficiently sensitive. However, this court asked that the parties specifically address in light of this court's holding and cook versus GameStop, whether accountants Cornell and Monte Calvo have standing based on their allegations that they made an online purchase and that they entered their names, addresses and payment and billing information into BPS's website. They do, and this court should reverse the district court. Could you clarify your theory of liability here? Is it that the interception alone with the intrusion upon seclusion, or is it the linkage of the data that is acquired through the interception with the identification of the person when they finally enter information like a name and other identifying information? So that's a good question, Your Honor. Our theory of liability for the statutory claims, so we allege a federal wiretap claim, the wiretap claim for several states, and several other of those types of statutory claims. The elements of those claims do not require the linkage of the information to create an online profile. We allege that they do do that, right, that BPS and the third parties that they work with to collect that information do collect, monetize, make profiles based on that information and use it to perpetuate harm against the plaintiffs. But the intrusion upon seclusion, either that's analogous to the common law for purpose of the statutory claims or for the common law intrusion upon seclusion claims that we allege in the complaint, that the injury, like the privacy injury, is the act of intruding upon the person's information while they're browsing on a website, regardless of the contents of that information. And I think it's especially egregious when it's credited. Regardless whether it's identified with the individual, with their name or not. Even if it's all of the data that's being entered, you're alleging just entering, for example, an address, that that alone would be intrusion upon seclusion. Well, and I think that in order for us to prove the claim, we would have to be able to identify who the plaintiffs are and identify who the class is. So for purpose of the merits of the claim, yes, I think that you would have to intrude upon particular individuals, right? Like, I think that's true. And the way you would know that you intruded upon a particular individual would be to be able to connect that information somehow with a person. Our factual allegation is that BPS and Cabela's and the third-party organizations that they work with can do that, regardless of whether or not a person in any given session replay entered their name in that particular session. Does that make sense? So part of our argument is that... If this can do it, get you. If someone goes to shop at the Gap, a store clerk could go into the dressing room and look at somebody while undressed. But the fact that they're able to do that or might do that, that doesn't give the person standing. You can't say, well, you know, I went to the Gap and I went in the dressing room and somebody could have gone in and looked at me. That's not a case. There's no standing there, right? I don't think that's our allegation. So I think our allegation is that we do that. I was just repeating what you said. You said they could do it. Don't you need to separate out what might happen or could happen from what you allege did happen? I think in this case the proper analogy in a store situation would be if Gap employees had a pattern or practice of walking into dressing rooms all the time and they recorded that footage or, you know, recorded camera footage of it. There are a series of facts. This is an office, right, where if they did that all the time, right, and you had a reasonable belief that they had in that circumstance, then it would apply. Right. I'm with you on that. The store policy is we have cameras in the dressing rooms and we videotape people while they're undressing. Okay. But obviously there's a lot of private sensitive information, namely a person lacking clothing. But what's the private sensitive information here? So for plaintiffs, Montecalvo and Cornell, that private information is payment card information, name information, and address information, which we allege is... So you're alleging that a name and an address is akin to someone's very sensitive private information. No. Well, no. I think in this instance we're making two separate allegations, and one of them is that payment card information, credit card information, that is always private information. You didn't allege credit card information in the complaint. I don't think that's accurate. Where did you allege it? We think we allege payment card information. Well, that's not the same as a credit card. Payment card could include a gift card. Okay. So at a Rule 12 motion, you would consider the factual allegations in the light most favorable to the plaintiff. We use those terms interchangeably in both the complaint and in our briefing. The question of what type of payment card information is a factual question. That would be subject to discovery. It just would give you a chance to replete. You could have easily replete and said Montecalvo had American Express card XXX, and you could have anonymized the numbers on the card. You could have anonymized the three-digit code on the card. You could have said the same thing for both plaintiffs. It would have been very, very easy to plead that a credit card was compromised here. But the standard on a Rule 12 motion isn't that what we could have pled. The standard is whether it's a plausible allegation that it could be. When a district judge says you haven't done enough, I'm giving you a chance to do more. The answer isn't forget about it. The answer is, oh, thank you, we'll do more. And do you disagree that it would have been extraordinarily easy to add one or two paragraphs that say, here is the credit card information of my client that was compromised? I think that we could allege that. I think that if the only determination that this court makes is that if we had used the word credit card instead of the word payment card, that this complaint would be sufficient to allege personal information, sufficient to survive an Article 3 standing challenge, then, yes, I believe that we can do that. I believe that all dismissals for Article 3 standing are without prejudice. I think that we could allege that information. I do not think that under a Rule 12 standard that that is a required interpretation, and I think that that is asking too much for a pleading when that pleading is supposed to be construed when Article 3 standing challenges of the motion to dismiss are supposed to track the same pleading standard that you used for a 12B6 motion and that the allegations are construed in the light most favorable to the client. But this came up at the hearing below in connection with standing, and the ambiguity of the payment terms were sufficiently clear because you were asked whether it involved a credit card or not. We don't generally take the verbal supplements of counsel to amend complaints. So what do we do with this, what we have in front of us that talks about just payment information when this was specifically raised below and you opted not to amend? Well, I think that we opted not to amend because our theory of how Article 3 standing worked, and admittedly this was almost two years ago, was prior to the vast majority of the case law on this question. And so we were not, so our position was based on the case law at the time that was both not necessary and would make it so that this court would be delayed in making a determination of what the correct Article 3 standard was. I think that in light of, for the case law, if you asked me again at the same hearing, do I want to amend, I would say yes, I do. We would request that right to do that, I'd be happy to do that, but I think our understanding at the time was that that was not at all the requirement, and most of the case law that constitutes otherwise has happened in the interim. Can I focus you back on Judge Hardiman's question as to what is actually alleged to have happened versus the potential, because the other part, and I take from your answer, that your standing arguments, your intrusion upon seclusion, is premised both on the notion of collection of the information that is entered and then the linkage of that information, that identifying information with browsing history. Yes. So, and I think... Let me ask you about that second piece. Sure. And there, throughout the complaint, it looks like the allegations are that this technology permits that linkage, like Paragraph 78, that EPS can associate those pieces of information. Where is the allegation as to the linkage with browsing history that it did as to Planus Cornell and Monte Carlo? Our argument is that that's the way the software functions as designed. So, when you set up the software to work, that's what it does. So, it's an automated process that's a collection of what those companies are designed to do with the information, and that it's not even that BPS has relationships with three different session replacement providers, and those providers also have their own independent collection organizations that collect it to other information at other retailers that they work with, independent of anything BPS does. And that's why our argument is that they procure and facilitate the interception. And so, in that situation, our argument is that that's how the software works, that's how it works as designed, and that that's our best understanding. Both that it goes backwards in time and forwards in time, right? That at the moment in time where Planus, Monte Carlo put their name, their address, and their payment card information into the website, that the software itself both connected it to past information and also stored the information that was put in in order to use it in the future. Paragraph 78 says, some session replacement providers, including those used by defendants, explicitly offer website owners functionality that permits that linking. Yes. And it appears from the description that that's an option that can be turned on or turned off. Am I misunderstanding what you've said in the complaint? And where do you allege that that is an automatic process? I don't think we're alleging it's an automatic process. I think our argument is that that's an available process and that BPS's choices aren't the only relevant choices, because as long as any other company opts into that functionality, then the information will be tracked going forward for that other company, even if BPS doesn't do it, because that's how the website works, because it's an option. But how do we know that that information is being linked to browsing history through some other company? Doesn't that need to be alleged, too, if that's the basis for your saying that there's a linkage here? So I think that we allege that because that's possible and because companies are making money off of it, that there's an incentive for them to do so. I think that's how the way that the – Where do you allege that? In the three intrusion upon seclusion count claims. So it's in those three different state or common law claims that are specifically related to – Just direct us to the paragraphs. Yeah, I can tell you the paragraphs for the whole claim, but since my time's up, if you want me to tell you the specific site when I come back, I can do that. Go ahead now. Yeah, so the count seven is the intrusion upon seclusion claim in Maryland, which is 276 to 296. Twelve is in Missouri, which is 382 to 402. And 14 is the Pennsylvania, and that's 422 to 441. And those are specifically the intrusion claim as a common law claim. And because we not only get stand-in for the analog to an intrusion upon – You're going a little fast for me. You know this case better than I do. My question was to have you please identify specific paragraphs. Rather than speaking in generalities about claims, if you could address the question raised by Judge Krauss by identifying specific paragraphs where you've done what she asked. I think that it is paragraphs 281 to 284. Okay, let's start with 281. Which is in count seven, the Maryland invasion of privacy version, which says each time plaintiffs and class members visited defendant's website on their personal computers and or mobile devices, the session replay code procured and utilized by defendants secretly collected their personal data in real time for defendants' monetary gain and without their consent. So that's the first part, right, which is that the defendants collect the information, right, for their own purposes. And then paragraph 282 says – Hold on one second there. What are we to make of personal data? I don't know what that means. Personal data could mean so many things. I don't know what it means in this context of 281. Well, our version is that personal data would include any information. That's our original – Would it include or would include? Where did you say that it did include personal data? And what is the – where did you articulate what the personal data was? So the personal data for each – That they secretly collected their personal data. Okay. Where in the complaint do you tell us what that personal data was? So the beginning of the complaint outlines all of the different information that's collected. That's the mouse click information, what it is you browse on, how long a session lasts, all of that information. We define all of that information as personal data in addition to credit card information. All right, but that contravenes GameStop a lot. Well, this complaint was written quite a bit before. I understand. I'm not being critical of the pleading here. I'm saying that that sort of broad side, all of its protected personal information, is not a valid argument under GameStop. Right. That's why we're focused on Cornell and Monte Calvo. Right. So what about Cornell and Monte Calvo? What personal data of theirs tracks on to the threat in 281? So it is true that in order to connect that for purposes of this complaint, you would have to connect the personal paragraph for each plaintiff, which say what information they put in the website when shopping and browsing, to the general allegations of a claim. All right, so can you refer us to that? Yeah, so the paragraphs for Plaintiff, Monte Calvo, and Cornell are on pages 100 and 103 of the Joint Appendix. And that's the same conversation we were having before, that the team incurred information, name, and address. Well, let's take a careful look at that.  So for Plaintiff, Cornell, it's paragraphs 104 and 105. And 104 talks about her purchase information, and then says that the information asked Plaintiff, Cornell, to provide certain information, including her name, address, and payment information, and that she provided that information and billing information in support. But that's one of the two theories, as I've laid out, right? And so when we're looking to connect that with browsing history, look, you've alleged that there's the tracking of browsing history, but that's, again, it's assigned to some, you know, anonymous sort of key link that identifies that person throughout browsing. You've also, I gather, you're alleging there's the capability to tie that history that is all connected to a single user to the particular person with their name that is attached to that browsing history. But what's described in the complaint seems like that linkage is an optional function. And if I'm understanding the complaint correctly, I'm trying to understand where you allege that that optional function was turned on here and applied as to these plaintiffs. I think that our argument as to these plaintiffs is that the intrusion happened far before that had to happen. So the act of having your name and credit card information or payment card information and your address, both by itself because payment card information is sensitive and also because the combination of the information is sensitive, like most data breach statutes, for example, will say that private information is a connection of a name or address to another piece of financial information, right? So our argument is that the movement of that, the intrusion upon that information, which we claim is a physical intrusion into a computer with a piece of web code, that that in and of itself is an intrusion into a protected privacy interest. I think we also allege that one of the ways that you know that it's an intrusion or that it's a protected privacy interest is because the companies who are doing it are doing so for their own monetary gain and in connection with the collection of information from a whole host of other websites that are used to connect them together. I think you're right that for any individual, my understanding is that for any individual goal, the goal of the technology is to connect that to an individual one living human being, right? But like Microsoft or Qualtrics or these companies create their own like kind of user ID number that they match up to a living human person that then they use to collect all that information going forward. So where is the allegation of the link to that user ID and the actual person, the name that is put in, to connect that actual person with browsing history? So I think that's the... I think we make two different claims. One is that they're allowed to do that and they have a monetary incentive to do so, right? I think that's sufficient. And then second, that the paragraph after that says, the session replay code embedded on the defendant's website indiscriminately captures the maximum range of data and information including highly sensitive and personal information displayed on the website. And that's what I mean by that's what it was designed to do. So in any given circumstance, if at all possible, that is what that technology is going to do. I just don't understand how saying that it's capable of capturing highly sensitive personal information or that it did capture highly sensitive personal information is a sufficient pleading when you don't tell us what the highly sensitive personal information is. I mean, that seems to be critical that you explain what is the highly sensitive personal information. And as you know from other opinions in this space, judges have thrown out things like personal medical history, social security numbers, you know, credit card information is a possibility. But we don't seem to have that here. We've got payment information. I'm looking at 104. Name, address, and payment information. It's vague. It's evasive. It's not. It really was not designed to be vague. It was really designed to be comprehensive, which is that the, I mean. Maybe it's too comprehensive. It's comprehensively vague because you've got hundreds and hundreds of paragraphs here. But maybe 12 paragraphs that said, you know, my client's social security number was captured by the session replay. I mean, we do not elect social security numbers. My client's credit card information. And then that way the court could then have a fruitful inquiry. Okay, what about the credit card information? Was it typical when you go to the point of purchase at the airport and you give your credit card information? And that seems to be fairly available, but you're not disclosing the three-digit security code on the back. Those are the sorts of, I think, distinctions that could be meaningful in this area. But I'm suggesting that this complaint is not very helpful in that regard because it doesn't go into any of those specifics. And I think that you are correct that that inquiry would be fruitful. I think that's a factual question subject to discovery that would be appropriately decided on a summary judgment of the merits of the claim. Right, but the facts need to be pleaded before you can even get to discovery and summary judgment. Well, yes, but you also take the facts in the light most favorable to the plaintiff, right? So there is a plausible – the most likely way that you pay for something on the Internet is a credit card. It's not a gift card, right? Like almost all transactions on the Internet are done with a credit card. Regular billing information, if you buy stuff on the Internet, involves putting in the credit card information and the CDV information, that's the three-digit code on the back. It involves a billing address, which we allege there's a billing address to connect the credit card to where it is that you're billing, in addition to potentially a shipping address if you're having something shipped to you. That's the ordinary way that you shop on the Internet. The idea that it might also be a gift card or it might also be a prepaid card, I mean, that's not the most likely interpretation. The most likely scenario for you shopping on the Internet is using a credit card. All right, so you – just to make sure I understand the crux of your argument. Your argument is that you want us to take the phrase in the complaint, payment information, and infer that the most likely scenario is that that payment information includes sensitive, personal, financial information like that contained on a credit card. Yes, well, I think that is our allegation, and I think our other – That's not your allegation. Our allegation is payment information. That's the allegation. I'm asking what you want us to do with the phrase payment information. Well, and the phrase payment and billing information, that's the next sentence after it. Okay. Yes, so – And what do you want us to infer that what is the sensitive, private, personal information that no normal person would want disclosed that is encompassed in what you call payment and billing information? I think any of those. I think a payment card and the billing information that goes along with it of any sort is a sensitive information. I don't know what a payment card is. Define in federal law. I know what a credit card is. I know what a debit card is. I know what a gift card is. I don't know what a payment card is. Is that all three of those?  Okay. I mean, and that is generally how it's defined in bank regulations and in almost all federal and state law. That's a term of art. The term payment card does include credit cards, debit cards, and I don't know if it includes gift cards, but prepaid – it would include a prepaid credit card or a prepaid debit card. I'm not sure that makes any distinction. You're defending what's here on the page, but as you noted earlier, if you had the opportunity to amend, it sounds like you would welcome that. Sure. Let me ask you something else because in terms of disclosure and that privacy tort, and GameStop sort of takes that off the table, but when you're looking at things like name, billing information, that's what you're arresting the tort of intrusion upon seclusion on. How do you reconcile the notion that that would be highly offensive to a reasonable person, that they have that information, when the context of this is that the user is entering that information voluntarily on the website? So, I think twofold, which is, one, the phrase highly offensive, when used in the context of intrusion upon seclusion or trespass claims, is done in the context of the rest of the phrase, which usually includes personal information or sensitive or private information. So, I think this rises to the level of that. The second portion of that is the act of putting your information as available to one party is not consent to give that information to other third parties, especially in this situation when they are not ministerial parties that are done in conjunction with one particular action. This is multiple parties, and they're parties that are not disclosed to the consumer, that the consumer does not have a chance to say no to, that cannot be acted on. Disclosure of private information, isn't that a different tort? No, because the argument is that these third parties are intruding upon their information. It's not that they're disclosing it to anyone else. It's closer to a trespass claim, right? It's a trespass to channels, right? It's coming into a computer or another physical phone, you know, another physical device. Who is alleged to be doing that trespass? Our allegation is that BPS is facilitating that trespass by the third party, and that that's a recognized portion of a wiretap claim. The third party being the party that GameStop indicates is functionally an internal party? No, they are not an internal party, because first of all, there's multiple of them, so it's not one. And second of all, those third parties, part of the agreement with them is that they can use the information for other purposes. So it's not the same that they're acting as a vendor, or they're acting as an agent or something on behalf of BPS. They are the third parties that use the information for their own ends, in addition to whatever it is they do for BPS, which I think is a distinction in that circumstance. All right. Thank you very much. We'll hear you in a bit after we hear from Mr. Rayfield. Thank you. Good morning. May it please the Court, Mike Rayfield on behalf of the appellees. I'll start right away with Cornell and Monte Calvo, and specifically whether their alleged harms are comparable to intrusion on seclusion, which I think is the only issue left open by GameStop. In my view, there are three independent reasons why their claims fall short. One relates to a deficiency in the allegations themselves, which we've been talking about, but I want to talk a little bit more about it. One relates to the nature of the intrusion tort, which is what we were getting at in the last set of questions, and one relates to the identity of the recipients of the data. So starting with the allegations, both Cornell and Monte Calvo allege, as we've been talking about, that they entered payment and billing information, but they were given a chance to replete if they could say, truthfully, in the district court words, that they shared sensitive personal information like financial data from banks or credit cards. Both plaintiffs declined that opportunity, so we have no idea if they paid with a credit card or with something unlinked to their identities. But just as importantly, which is not something that's come up at this argument so far, neither plaintiff has actually alleged that any payment information was sent to a session replay vendor or that it was sent in an unencrypted form. If you look at the complaint, actually, the plaintiffs are very careful to avoid saying that their payment and billing information, as opposed to the items they purchased on the website, were sent to a session replay vendor, and I'll point the court specifically to paragraphs 65 and 68, which are at JA 87 and 88, where they say things like, virtually every piece of information was sent to a vendor, nearly every action a website user takes was sent. Plaintiffs. Very fair, and I was just about to get to that. So if you go to JA 100, which is Ms. Cornell's allegations, in paragraph 104 she says, the complaint alleges, Plaintiff Cornell provided this information to BPS by using her keyboard to enter her name, address, and payment and billing information into form fields during the checkout process. So that's what she sent to BPS. Then if you look at page 107, where Ms. Cornell is explaining what was sent to the session replay vendors, there is no billing information in that paragraph. It says, Plaintiff Cornell reasonably expected that her visit to BPS's website would be private and that defendants would not have procured a third party that was tracking, recording, and or watching Plaintiff as she browsed, interacted with the website, and searched for products. So there's a disconnect there. She says, I sent my payment and billing information to BPS. She does not say that information was sent to the session replay vendors, and that's big because if only the defendants actually saw the billing information, regardless of what it was, that can't possibly be an intrusion. That disclosure is entirely voluntary. But earlier on in the complaint, the allegation is that every single movement and everything that is entered is being tracked. Why wouldn't that carry through to this information also being tracked? I don't think that is the allegation, Your Honor. I don't think that they ever actually say every piece of information. And, I mean... Right. And I think this was the paragraph that was being discussed before where we don't... I mean, it says personal data, but it doesn't say what that personal data is. And, I mean, this is not some kind of gotcha. I mean, I can tell you, I mean, this is outside... I don't want to go outside the pleadings too far, but I will say that our technology does not, in fact, send credit card information and other identifying data to the session replay vendors. So this is... Well, I think you can assume that it includes name... I'm sorry, so... I'm not going to suggest that that's not a... an unfair inference to be drawn from those two things. I'm just saying, if you look at the complaint, everything in context, when the district court is giving them an opportunity to say, A, this was credit card information, and B, it was sent to the session replay vendors, and they're not doing either of that, and they're declining either of those opportunities, I think that that context is important. But let me assume... If you can draw a fair inference from payment information, if it's a fair inference that that... For most people, purchasing things on the Internet is a credit card, then you don't really need the second piece, because they've already alleged that all of the information, including that payment information, is sent. I don't think... Well, I don't think they actually ever... I'm not sure I read the paragraph 281 in the same way Judge Freeman does. I don't think that that... I mean, first of all, this is an allegation as to one count on behalf of a Maryland subclass, and neither Cornell nor Monte Carlo are from Maryland. So... This doesn't even apply to them. This doesn't even apply to them, and when you get around to the allegations about them... Just look at the ones that apply to them. Right, and that's what I was reading before, which is on paragraphs 107. Okay, and is there the same allegation that says... I don't think... Yeah, sorry. I don't... Even as to Monte Carlo, I don't see an allegation that... I don't see an allegation that... Yeah, well, yes, Your Honor, and I think this paragraph is actually telling. It does not say payment information, and it says nearly every interaction. But... Nearly every interaction is right in the heartland of Cook. Yes. We've dealt with the same issue. It captures every click, movement, every jot of the mouse. Right, and on that list, that's the Cook list. That's not payment and billing information. But I do want to assume for the moment that the plaintiff's credit card information was sent to the session replay vendors and just deal with that assumption like that. We disagree with that, but just what the import of that is in light of the intrusion tort. Because I have two things to say about that. The intrusion tort does not have anything to do with whether the data is disseminated to a third party. It's all about the intrusion itself, something that the plaintiffs have said throughout their briefs. The tort that turns on dissemination, as Judge Krauss was saying, is public disclosure of private facts. And under GameStop, that's out. So they have to rely on intrusion on seclusion, which is a different animal. It's defined as an intentional intrusion, physical or otherwise, upon the solitude or seclusion of another if the intrusion would be highly offensive to a reasonable person. I'm reading from GameStop here. Unlike the disclosure of private information, the harm caused by intrusion does not turn on the exposure of personal or sensitive information. And that makes sense, because this tort isn't about things like identity theft or financial risk. It's about conduct that's intrusive, that causes humiliation, mental harm. And there is nothing intrusive about the receipt of voluntarily transmitted payment information. So two points on that. One is that I don't think that the transmission to the session replay vendors matters under the intrusion tort, because it's not related to the intrusion itself. But also, let's assume that I'm wrong about that. Let's assume that it does matter. The point would still lack standing, because the recipients of the payment information, the vendors, aren't the kinds of third parties that matter under the common law. And I think the best case, the closest case on this issue, in addition to the one we sent as a 28-J letter recently, is Barcliffe v. Keystone Services. In that case, a debt collector, Keystone, unlawfully sent the plaintiff's personal information to a mailing vendor, RevSpring. This included the plaintiff's name, address, debt balance, and other information about the debt. But the court held that Barcliffe lacked standing, because she did not, and I wrote this down, she did not allege that anyone outside of Keystone or RevSpring accessed her personal information. Instead, the communication of personal information only occurred between a debt collector and the vendor. That's very similar to this case. Like Barcliffe, Cornell and Monte Carlo allege that they shared their names, addresses, and a form of financial data with a third-party vendor. In Barcliffe, it was the plaintiff's debt balance. Here, it's payment and billing information. And no one other than EPS and the vendors accessed their information. Thank you. I agree that the roles of the two vendors are certainly not exactly the same, but I don't think that's a substantive difference. I think in both cases, the party's agent is assisting the defendant with the exact conduct that the plaintiff claims is unlawful. And I think, in my view, the best reading of Barcliffe is that a party's agents, its vendors, aren't the kinds of third parties that the common law is concerned about. It's concerned about truly public disclosures. For example, in cases like St. Pierre and in Naples, where debtor information was exposed through the plastic on an envelope to the entire world. Like, everyone could see that information. That's the kind of public dissemination that this court has recognized for standing. I do want to acknowledge that... That's related to disclosure of private information. Let's bring it back to the intrusion upon seclusion, because your argument was that the sharing of this information with the session relay providers is not something that adds to any sort of humiliation or embarrassment because you voluntarily disclosed it. But to the extent the allegations are that they are also authorized by the company, the defendants, to share that more broadly, why wouldn't that be an intrusion upon seclusion? I'm sorry. Well, I don't think there's an allegation that they shared any information, much less credit card information, broadly beyond the session relay vendors. I think that's exactly our argument, is that this was shared at most. We don't even think the complaint gets them there, but we think this information was shared at most with the vendors. And that's just not the public under this court's conception of either public disclosure of private facts or intrusion on seclusion, which doesn't even turn on a disclosure. And I would say, you know, if Cornett... It wouldn't make sense, at least to me, for Cornell and Monte Carlo to have standing but for Ms. Barclift not to have standing. Because if anything, the information revealed in Barclift was more sensitive and more central to the statute at issue. It was, you know, the debt information that the statute was designed to protect. More sensitive than credit card information. And I would just, since I'm running out of time, I would just close by saying, like, when you visit a website and enter information, I think it's reasonable to expect that this data will be viewed both by the website owner and entities that are involved with helping the owner keep the website functional. Everyone understands that today. This isn't just routine maintenance. This is being leveraged for commercial purposes. But let me just ask you for a minute about the limiting principle here. Even if we accept your argument here, I'd like you to give us some limiting principle because it can't be the case that, well, maybe you'll say that it is, but I'm suggesting that it can't be the case that no matter what somebody does on a website, that the owner of the website can do whatever it wants with that information. There has to be some information that would invoke intrusion upon seclusion or disclosure of private information. Can you help us with the limiting principle? Absolutely. And so I think that two of, I can not only give you a limiting principle, but I can give you two lines of Third Circuit cases that I think are good guidance. Two situations where this kind of data, I would say, would give rise to, would be comparable to intrusion on seclusion. One is cases like Nickelodeon and Google Cookie, which the court discussed in Gabe's stop, where the defendant is actually telling its consumers, we're not going to share any of your information. Right, but what's weird about that is they're just lying there. That doesn't go to what the nature of the information is as much, does it? I mean, if those vendors, like if in Nickelodeon, they had said, oh, hey, you know, we hope your kids use our website, and by the way, we're going to sell all your kids' information, your family information to Disney and every other person that might be interested in selling stuff to kids. Would that disclosure defeat the tort? Are you saying that... If there was a disclosure, I think, and if it were like a true binding disclosure, like if it were in the privacy policy... So is it about disclosure and honesty, or is it about the sensitivity of the data? Because I think those are two different things, aren't they? I agree, and I think that there is, that's one line of cases. I think there's the dishonesty line of cases where truly the users just don't have, are given reason to believe that their data is not going to be shared. The second category is cases like DeNapol's and St. Pierre where there is a true public disclosure, where there's data being shared, being disseminated, not just to agents that are assisting with some sort of Internet functionality, but a dissemination to the public, but here's where I won't necessarily give you a limiting principle. I don't think there is any category of information that a user could enter onto BPS's website that a user could voluntarily transmit onto BPS's website that would give rise to standing if shared only with the session replay vendors. That's something I won't... Okay, so you get my credit card information, I buy something from BPS, you share it with your session replay vendor and then your session replay vendor goes on the Internet or the dark web and posts my credit card information. I still don't have a case? You have a case against the session replay vendors, but not a case against BPS. If there's no... I don't even know who they are. I have to sue BPS first to figure out who they are. Fair enough. I don't have any insight into that. This has been an education for many of us as to what is done with mouse clicks. Fair enough. I do think that that would be a different case. I think if the session replay vendor were spreading the information on the dark web, that would be a very different case. And doesn't that go right into the heartland of plaintiff's claim here that under the wiretapping statutes, you'd be facilitating, aiding and abetting their disclosure of that sensitive information? No, I don't think there is such an allegation here. I don't think there's... I'm not talking about this case. I'm focusing on the limiting principle that you could have a problem. If you were transmitting truly protected sensitive information to the session replay code vendors and then it went public, that could be right in the heartland of the wiretap statute, couldn't it? I'm not aware of a case that holds that there's such... If we're focusing on the intrusion tort, I'm not aware of a case that suggests that you can... that there's such thing as aiding and abetting an intrusion on seclusion. I think that if we're in the world of the intrusion tort, that who gets the... We're talking about intrusion into someone's seclusion or private affairs. It's focused on the intrusion itself. So I'm still struggling, Judge Hardiman, on responding to a hypothetical about sensitive information. Well, to put it sort of simply, I'm positing the question of whether it can be an intrusion upon seclusion when party A deals with party B and party A is reasonably believing that only party B has the information and then does that mean that party B has a right to broadcast it to the world? No, I don't think so. That would be a public disclosure of private facts. That would be... We've been told here that... I'm looking for where this may be in the complaint and maybe we can hear that on rebuttal, but that part of the agreement is that that is being authorized by the website owners. They're authorizing the session replay providers to further disclose the information that's collected. I don't... I'm not aware of such an allegation. I don't think they've argued that in the brief. If there is such an allegation, and I just... Apologies if I missed it, but it would still fall short because they're saying it's authorized, but they're not saying it's actually happened. This goes back to what we were talking about before. If they've only alleged that it was authorized, which I don't think they have, then it still would be the case that they have to allege that there actually was a dissemination. The complaint is pretty clear, I think, that the only parties that have gotten this information are BPS and the session replay providers. What if it's only BPS and the session replay providers, but there's that other... We've been talking about the financial information that's voluntarily entered, but what about the allegation that there's then a linkage because of that key identifying information, whatever number or code is used for a user ID, that that is then linked to the person? And so you have not just the session where someone gets on, browses and buys something, but that it's then linked to all prior histories of those searches. Why isn't that an intrusion upon seclusion? So... I'm sorry, I'm having a little trouble with that question. So the theory is that there's a user... there's some sort of user identity name being tagged with this particular user that allows the BPS or the session replay vendors to see if the same user has been browsing other times before. That appears to be the allegation in the complaint. Right. I mean, that's the same thing that was at... that's exactly what was at issue in GameStop. It's the same technology. I mean, all of these session replay plaintiffs allege that the session replay vendors have this ability to say, this is the same user who last week was doing this on the website. That's one thing when it's a user ID number. It's another where someone has entered their actual name and identifying information that then links that human being, not just a fairly anonymous user ID, to a browsing history. Why isn't that an intrusion upon seclusion? I'm not aware of any case that suggested that's comparable to intrusion on seclusion. Isn't that another way of reading what was happening with Nickelodeon and Google? I don't think that's how the court dealt with it in GameStop. I mean, I don't think just knowing... I don't view it as an... I'm sorry, I shouldn't say I don't, but to me, it's not an intrusion if you are looking at... Just because you can link a name to a set of fairly anodyne information doesn't make it an intrusion. There's no... It gets back to the video camera in the brick-and-mortar store that not only knows that a human being is looking at certain items, it actually has somebody's face, and that face can be linked to the identity. Yeah, exactly. It's no different from that. It's... There's no... Intrusion on seclusion, there's plenty of examples listed in the restatement. It's things like peering into someone's house, opening their mail without their permission, like looking at... Rifling through their bank records. Nothing like that is alleged here. I don't think there's any intrusion case that says that just knowing someone's name and linking it to things they're doing on a website that they could just as easily be doing in a brick-and-mortar store is an intrusion. Well, it depends. Again, we'll go back to the substance of what they're doing. If you are running a search that you assume is anonymous for different medical supplies that you may need for a medical condition, and you haven't put in your name, you're not tying that back to yourself, and then a month later you're back on and you decide that you're going to buy a lamp, and suddenly now your name is tied back to that search. I take it that that's part of the allegation here, and if it is sensitive information that is part of the search then being linked to a person's name, why isn't that a potential basis for intrusion upon seclusion? And put aside whether it's sufficiently alleged here, but in that hypo, why isn't that enough if you have the allegations as to the nature of the information disclosed? Because I don't think the search is adding anything in that situation. Like, again, I go back to Barclift. If Barclift did... If the session... Not session... The vendor in that case was getting Barclift's name, address, and information about her debt, and that wasn't considered to be an invasion of privacy. I don't see why that would be not an invasion of privacy, but then you also just add that the session replay, that the mailing vendor in Barclift also knows that the user has browsed on BPS's website. I'm just... I'm just... So there is... So in the hypothetical, there's a sensitive search, and the session replay vendor has been authorized to share that sensitive search outside of the session replay vendor. I think there are two steps to it, because when someone runs a search... I mean, you're... You seem to be proposing that the default expectation is that when you run a search on Google or on any website where there's the potential for something like session replay to be functioning, that you should understand that the search you run and the contents of it, the things that you may be searching for, are going to be tied to an ID, and if you later enter your own name, your personal information, that any search that you've done historically is then going to be linked to your name. That should be the default expectation of anybody who gets on the Internet and runs a search. Am I understanding you? I'm not necessarily saying that it's the default expectation. I'm saying it's not comparable to intrusion on seclusion. Well, what if the nature of the search is for something that's embarrassing? You know, adult diapers. Someone is looking for adult diapers, and in that search is not entering their name or buying it. It's later when they're buying something that is anodyne. But now it's being tied back to them with personal information that is embarrassing and that they wouldn't normally expect to be sharing. You're positing that that can't be intrusion upon seclusion because the expectation is that any time you run a search, that will later be linked to your actual identity. I'm saying that that can't be intrusion upon seclusion because intrusion on seclusion doesn't... The sharing of that information is not relevant to the tort of intrusion on seclusion. The question is whether the search itself and the provision of the name to the defendant would be an intrusion on seclusion. Those are two separate events. Okay. The issue is that they're being linked. So the name is being linked to the search on the website? Right. Right. I don't... In my view, that is not comparable to intrusion on seclusion. Even if the search that it's being linked to involves something that is embarrassing to a reasonable person? Correct. Could it be the other tort? It could be. If it was disseminated to the public, in a way that it actually causes humiliation and reputational harm or something like that, then it might be comparable to that other tort, but it's not comparable to intrusion. Why doesn't it cause humiliation when it's now being shared with session replay? I mean, first of all, in this case, just to go... I know we're talking about hypotheticals, but just to go back to this case, the plaintiffs don't even allege that there was any humiliation or any stress or any kind of emotional harm. I guess in a case where the plaintiff did allege that, I would still say that it's no... It's... I think that... I think that we would need to surmise that it's almost a completely different business than Bass Pro Shops, for example. If we're talking... If we're, say, talking about, like, a website that is in the business of providing medical services, is that closer to the hypothetical you're talking about? Any search that you were running for some product or some information that would be sufficiently humiliating, embarrassing, that you're not tying your name to it. You're not entering your name in the course of that session. Right. Right? I apologize for repeating myself, but my position is that the tying of the name in itself to information that you are voluntarily sharing with the... I know you're not sharing your name, but you are voluntarily sharing the sensitive information. I would say that the addition of the name on its own does not make that conduct comparable to an intrusion on seclusion. That's pretty extraordinary. I mean, the difference between running a search and then associating your own identity with that search, wouldn't most people find it more humiliating to have their name associated with a search for, say, adult diapers than for it to just be an anonymous user ID? I don't think... I think in the hypothetical, the person does not intend to share... to link their name to that information, but I don't think that that is comparable to intrusion on seclusion. Maybe it is embarrassing to that person, but that person is also conducting a search on the Internet, which everyone knows is not completely anonymous for the most part. And so I just don't think that that would... Your position is it's not anonymous at all. And this goes back to what I was asking earlier. You're positing that the default is that any reasonable user of the Internet should understand that the search they run may be tied to their actual identity. I think at the very minimum I'm saying that a reasonable person would not be... that it's not an intrusion on seclusion if that name is linked to their search. All right. Thank you, Mr. Rayfield. We'll hear rebuttal from Ms. Baxter-Kauf. Just a heads up, we'll probably hold you to the three minutes. All right. So I wanted to start by... I really only have two things I want to say. And the first one is that the defendants pointed the court to a Fourth Circuit case, Trusted I.D. O'Leary, as an indication of kind of a recent case talking about types of information that's not subject to this. And I think there's a Fourth Circuit case directly after that that discusses O'Leary that's really helpful for reframing or thinking about what intrusion upon seclusion means. And that's American Federation of Teachers versus dissent, which was August 12th of this year, and it's 2025, Westlaw, 231, 32, 44. And it talks about how intrusion upon seclusion has long been understood to guard not against the disclosure of sensitive information as such, but against the feeling of unease when and where one should ideally be at peace. Prying eyes and probing fingers can be as disquieting when aimed at one's private affairs as when aimed at one's private bedroom. Unauthorized knowledge of sensitive information is instead more closely shielded by other privacy torts, but unlike intrusion upon seclusion, which finds its roots in trespass. So the point isn't the disclosure of the information. The point is the act of having been intruded on in the first place, the fact that there is a third party that has that knowledge, not what they do with that knowledge. And I think that the complaint does allege both that these session replay providers are third parties who use that information for their own gain, unrelated to anything that is just what DPS says to function their website, and that we specifically make those allegations, both that it is an intrusion and that the plaintiffs do experience harm. I will say we had the conversation about the paragraphs related to the intrusion in relation to the Maryland claim because it's the first time that an intrusion upon seclusion claim comes up in a complaint. But there is an analogous allegation made for ICE, both Cornell and Monte Calvo, plaintiff Cornell is in Pennsylvania, so it's paragraph 424, makes the same argument. And Monte Calvo is in Massachusetts, so that's count 9 in paragraph 322, makes the same allegation. And similarly, as in the Pennsylvania claim, we do specifically allege that plaintiffs and class members were harmed because it caused them mental anguish and suffering arising from that loss of privacy. That's the harm that's identified as the intrusion. Can I go back to the sort of default of, I mean, we're in 2025, you know when you're browsing and suddenly these things are popping up that relate to some search that you ran a week ago, right? That there's something going on connecting these things. Can you really say that it would be highly offensive to a reasonable person today to learn that their information that they are entering onto a website and what they're doing as they're browsing is being used for marketing purposes? Yes, I think it's offensive. I think it's equivalent to opening your mail, not just having the mail. I think that's a good analogy. In this situation, I think that regular users of the Internet and specifically our plaintiffs who allege this, and I don't know whether they're actual plaintiffs or not, but they specifically allege a privacy violation that I think is a reasonable one, which is that when they go to a website and they shop on that website, they expect that the information can be given to the party that they're shopping with in order to effectuate the transaction. They do not reasonably expect that that information will be given to third parties when it's aggregated with everything they've ever done past on the Internet and everything they will do on the future, including to the point that if at any point they enter their name or their credit card information or sensitive information related to their personal shopping habits or their Internet browsing habits, that all of a sudden all of that information should be aggregated together in a dossier that is used for profitability, marketing, and just knowing that information by the third party, which is the harm that we identify. The act that those third parties know is the harm, and no, I don't think that's reasonable, and I don't think that the existence of the Internet gets rid of every harm to privacy that's been in existence since the 17th century. It's a function of technology, but the common law harm is the same. I'm happy to answer other questions if you have them. Otherwise, thank you very much for your time. I'm sure you've both survived the marathon. Congratulations.